```
 1              IN THE UNITED STATES DISTRICT COURT
 2                   FOR THE DISTRICT OF ALASKA
 3
 4   NINILCHIK CHARTERS, LLC,
          Plaintiff,
 5
     vs.
 6
     CATERPILLAR, INC; a Delaware
 7   Corporation,
          Defendant.
 8   _____
     Case No. A04-0250 CV (JKS)
 9
10
11              DEPOSITION OF MICHAEL FLORES,
12                  Pages 1-177, inclusive
13                  Commencing at 10:00 a.m.
14               Wednesday, November 9, 2005
15                     Anchorage, Alaska
16
17
18            Alaska Stenotype Reporters
                 511 West Ninth Avenue
19              Anchorage, AK 99501-3520
                 Serving Alaska Since 1953
20
21   Rick D. McWilliams, RPR, Ret.    Telephone 907.276.1680
     Fred M. Getty, RPR, Ret.         Email AkSteno@aol.com
22                                    Fax 907.276-8016
23
24
25                              ORIGINAL
```

Ex. D, pg. 1 of 9

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF ALASKA

 3

 4   NINILCHIK CHARTERS, LLC,
          Plaintiff,
 5
     vs.
 6
     CATERPILLAR, INC; a Delaware
 7   Corporation,
          Defendant.
 8   _____
     Case No. A04-0250 CV (JKS)
 9

10                  DEPOSITION OF MICHAEL FLORES,

11   taken on behalf of the defendant, pursuant to notice, at

12   the law offices of Hughes, Bauman, Pfiffner, Gorski and

13   Seedorf, 3900 C Street, Suite 1001, Anchorage, Alaska

14   before Rosie S. Scott, Certified Shorthand Reporter for

15   Alaska Stenotype Reporters and Notary Public for the

16   State of Alaska.

17

18

19

20

21

22

23

24

25
```

```
 1                        A-P-P-E-A-R-A-N-C-E-S

 2

 3      For the Plaintiff:    DAVIS AND DAVIS
                              By:  Leonard R. Anderson
 4                            405 West 36th Avenue
                              Suite 200
 5                            Anchorage, Alaska 99503
                              (907) 561-4420
 6

 7      For the Defendant:    SEDGWICK DETERT MORAN AND ARNOLD
                              By:  Daniel W. Bir
 8                            801 South Figueroa Street
                              Eighteenth Floor
 9                            Los Angeles, CA 90017-5556
                              (213) 615-8051
10

11

12

13

14

15

16

17      Reported By:          Rosie S. Scott, Certified
                              Shorthand Reporter
18

19

20

21

22

23

24

25
```

```
 1                          I-N-D-E-X
 2
 3
     EXAMINATION BY:                                   PAGE
 4
 5        Mr. Bir                                       5
 6        Mr. Anderson                                 168
 7        Further by Mr. Bir                           171
 8
 9
10
11   EXHIBITS:
12        Exhibit 1, Deposition Notice                  11
13        Exhibit 2, Extended Service Contract          64
14        Exhibit 3, Documents                          70
15        Exhibit 4, First Amended Complaint            90
16        Exhibit 5, Travel Log                        108
17        Exhibit 6, Wilkie's Invoice                  141
18        Exhibit 7, Ninilchik Find Report             153
19        Exhibit 8, Calendar                          162
20        Exhibit 9, Photo of Serial Number Engine     168
21
22
23
24
25
```

```
 1   serial number for that?
 2       A.   Yes.
 3            MR. ANDERSON:  That's the one that's currently
 4   in it?
 5   BY MR. BIR:
 6       Q.   When you bought it.
 7       A.   Yeah, when we bought it, starboard motor is
 8   01Z06986.
 9       Q.   Now, was that engine under warranty when you
10   bought it?
11       A.   No.
12       Q.   It was not?
13       A.   It was not.
14       Q.   So there was no warranty applicable to that
15   engine?
16       A.   Correct, no warranty from Caterpillar, nothing
17   in paperwork.
18       Q.   Okay.  When you say "nothing in paperwork," was
19   there any warranty applicable to that engine at all, from
20   anybody, that you're aware of?
21       A.   Not that we were given.
22       Q.   Did Dustin Clark give you a warranty on that
23   engine?
24       A.   No.
25       Q.   To the best of your knowledge, there was no
```

```
 1   warranty at all applicable to that engine?
 2        A.    Correct.
 3        Q.    You had mentioned that the ARCTIC ENDEAVOR,
 4   when it was still owned and in the possession of
 5   Dustin Clark, had sunk, in 1994?
 6        A.    No. It had sunk. I don't know if he was in
 7   possession of it.
 8        Q.    Okay.
 9        A.    I don't know when he bought the boat.
10        Q.    But it was a 1978, I believe, the vessel?
11        A.    Correct.
12        Q.    So when you purchased the boat from Mr. Clark,
13   he informed you that it had sunk?
14        A.    Correct.
15        Q.    Did he tell you how he knew that?
16        A.    It's in the documentation that we have on board
17   the boat.
18        Q.    Oh, it is in the documentation?
19        A.    Correct.
20        Q.    And although we'll get a chance to look at that
21   documentation later on, from the best of your
22   recollection, can you tell me what is in that
23   documentation? Or is there anything in that
24   documentation that tells you why or how the boat sunk?
25        A.    No. I was told how it sunk. But there's
```

```
 1   some enemies and probably some decent friends in the
 2   business.
 3            Did you try to work out with any other charter
 4   boats maybe referring customers, or does it just not work
 5   like that?
 6        A.   It does work like that.  But to give an idea,
 7   in August, like when the boat broke down, The Fish House
 8   books for 60 boats.  There's no space for the rest of the
 9   month.  Everybody is full.
10        Q.   So it's not a matter of -- there just wasn't
11   any availability?
12        A.   No.  We'd much rather deal with not catching
13   any fish than deal with 12 pissed off people every day,
14   telling them the boat is broken, and they're not going
15   fishing, because I can't reschedule them, we can't find a
16   boat for them.  It's not a pretty deal.
17        Q.   Right.  Okay. Just to confirm, in your
18   discovery responses, I believe in response to the damages
19   that you're seeking in this lawsuit, you are looking to
20   recover the cost of replacing the failed 3208; is that
21   correct?
22        A.   Correct.
23        Q.   So that's roughly $15,000 that you had to pay
24   Wilke's to do that overhaul; is that correct?
25        A.   Right.
```

1    Q.    And then you're seeking $60,000 in lost profits
2  for the time period that the boat was down; is that
3  correct?
4    A.    That's correct.
5    Q.    So we have $15,000 for the replacement cost,
6  and $60,000 for lost profits, and that's the only damages
7  you're seeking in this lawsuit, correct, that you're
8  aware of at this point?
9         MR. ANDERSON:  I mean, if that's what you're
10 aware of.
11        THE WITNESS:  Yeah, that sounds correct.
12 BY MR. BIR:
13   Q.    Okay.  When the engine failed on August 10th,
14 did it cause any damage to any other part of the boat?
15   A.    As far as?
16   Q.    As far --
17   A.    No.  It didn't go through the hull or anything
18 like that.
19   Q.    So it didn't cause any damage to any part of
20 the boat?
21   A.    There's no structural damage.
22   Q.    Okay.  Aside from the block breaking and the
23 shaft breaking, did it cause any damage to any part of
24 the engine, that you're aware of?
25   A.    What do you mean?

```
 1                    REPORTER'S CERTIFICATE
 2         I, ROSIE S. SCOTT, CSR, hereby certify:
 3         That I am a Certified Shorthand Reporter
 4   for Alaska Stenotype Reporters and Notary Public for the
 5   State of Alaska; that the foregoing proceedings were
 6   taken by me in computerized machine shorthand and
 7   thereafter transcribed by me; that the transcript
 8   constitutes a full, true and correct record of said
 9   proceedings taken on the date and time indicated therein.
10         Further, that I am a disinterested person to
11   said action.
12         IN WITNESS WHEREOF, I have hereunto
13   subscribed my hand and affixed my official seal this
14   9th day of December, 2005.
15
16
17
18              [signature: Rosie J. Scott]
19         ROSIE S. SCOTT
           Certified Shorthand Reporter
20         My Commission Expires
           8/16/08
21
22   [Notary Public seal: ROSIE S. SCOTT, NOTARY PUBLIC, STATE OF ALASKA]
23
24
25
```