Frank A. Pfiffner
HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
3900 C Street, Suite 1001
Anchorage, AK  99503
Phone: (907) 263-8241
Fax: (907) 263-8320
E-mail: fap@hbplaw.net
ABA No. 7505032

Elliott D. Olson
Daniel W. Bir
SEDGWICK, DETERT, MORAN & ARNOLD LLP
801 South Figueroa Street, 18th Floor
Los Angeles, California 90017-5556
Telephone: (213) 426-6900
Facsimile: (213) 426-6921

Attorneys for Defendant Caterpillar Inc.
(erroneously served and sued as Caterpillar, Inc.)

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| NINILCHIK CHARTERS, LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>CATERPILLAR, INC., a Delaware corporation,<br><br>    Defendant. | Case No. 3:04-cv-250 (TMB) |

**REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
BY DEFENDANT CATERPILLAR INC.**

I.

**INTRODUCTION**

By means of its Opposition, plaintiff seeks to rely on entirely erroneous and immaterial positions of law to present a proposed explanation for the flaws in its claim for economic damages. Despite asserting that an "exception" to the economic loss doctrine exists, plaintiff presents no grounds, policy or otherwise, to support recognition of the "exception" by this Court. Instead, plaintiff relies solely upon two cases, the first of which has been overruled by the Supreme Court on the very point in question, and the second of which has not been followed or even mentioned by any other court across the country. Examination of the case law as well as the policies underlying tort law and the economic loss doctrine leads to the inescapable conclusion that plaintiff's argument must be rejected and summary judgment is thus properly granted in favor of this defendant as a matter of law.

II.

**ARGUMENT**

A. **NO CAUSE OF ACTION EXISTS FOR BREACH OF ANY POST-SALE DUTY TO WARN WHERE PLAINTIFF'S DAMAGES ARE PURELY ECONOMIC.**

Plaintiff apparently concedes, as it must, that any alleged failure to warn, at the time of manufacture and sale of a product, of known dangers inherent in the use of that

product, which failure allegedly causes only economic loss, cannot support a cause of action sounding in tort. (Plaintiff's Opposition, p. 1 & 2). Nevertheless, plaintiff suggests that a cause of action in tort should be maintainable when that same product causes the same economic loss, but it is alleged that the manufacturer's failure to warn is predicated on the manufacturer's learning of the "defect" or dangerous condition of the product *only after* the manufacturer and sale of the product. Despite the lack of any persuasive authority for this proposition, through either policy concerns or case law, plaintiff is seeking to have this Court create a cause of action in tort which directly contradicts Supreme Court precedent.

1.   **Policy Considerations Underlying Tort Principles And The Economic Loss Doctrine Preclude Plaintiff's Post-Sale Failure To Warn Theory.**

Recognition of a cause of action in tort which would allow recovery against a product manufacturer for purely economic loss where the claim is based upon an alleged breach of some purported post-sale duty to warn would be directly contrary to the Supreme Court's holding in the landmark case of *East River Steamship Corp. v. Transamerica Delaval Inc.,* 476 U.S. 858 (1986). In *East River,* the Court enunciated an unconditional bar of all tort recovery for economic loss arising out of a defective product. *Id.* at 871. The Court further explained, "whether stated in negligence or strict liability, ***no products liability claim lies in admiralty*** when the only injury claimed is economic loss." *East River,* 476 U.S. at 874-76 [Emphasis Added]. Thus, the timing of an alleged

"breach of duty" to support a negligence claim, pre-sale or post-sale, is immaterial to the policy underlying the economic loss doctrine.

As thoroughly discussed in Caterpillar's moving papers, the economic loss rule is premised on the well-established principle that personal injury or property damage must occur before a negligence action can exist. *Id.* at 866-76. Absent the occurrence of the type of damages which tort law was developed to protect against (personal injury and property damage), no products liability cause of action exists in tort – regardless of a purported "breach of duty" or the timing of such a "breach." *See East River*, 476 U.S. at 866-68. Thus, plaintiff's argument is necessarily defeated by the foundational principles underlying tort law and the economic loss doctrine as defined under admiralty law.

Moreover, plaintiff has not articulated any legitimate policy basis for distinguishing between pre-sale and post-sale failure to warn theories for purposes of the application of the economic loss rule. Indeed, the policy implications are the same regardless of the theory of recovery on which plaintiff's claim is based. Neither failure to warn theory is cognizable where the damages claimed consist solely of economic loss since tort law is not designed to protect against such loss in the first place.

2. **Plaintiff's Post-Sale Failure To Warn Theory Has Been Repeatedly Rejected In Other Jurisdictions.**

The argument presented by plaintiff has been directly addressed and rejected by numerous courts throughout the country. Directly on point is the case of *Sea-Land*

*Service, Inc. v. General Electric Company,* 134 F.3d 149 (3rd Cir. 1998). In *Sea-Land,* the plaintiff, as in our case, owned and chartered vessels. However, after an engine overhaul on a particular boat, and after only 47 hours of operation, the engine broke down, causing only damage to the engine and the engine casing. The manufacturer of the engine, General Electric, repaired the engine free of charge. Several years later, however, the engine failed again at the same location. Plaintiff brought suit against GE to recover for the economic losses caused by the two engine failures. Among other tort claims, the plaintiff alleged that GE had become aware of defects in their engines after they were on the market but negligently failed to warn plaintiff of the defect. *Id.* at 151-52.

GE moved for summary judgment of plaintiff's tort claims, including the post-sale duty to warn claim, on the grounds that they were barred by the economic loss doctrine, as enunciated in *East River.* The district court granted GE's motion. Specific to plaintiff's post-sale duty to warn claim, the district court found that GE did not have actual knowledge of the defect. On appeal, the Third Circuit affirmed the grant of summary judgment on this claim, but disagreed with the reasoning. *Id.* at 155.

In rejecting plaintiff's post-sale duty to warn claim, the Third Circuit emphasized that it was not discounting the duty of a manufacturer to warn of a defect in order to protect the persons using the product or the public in general. The court noted:

> We agree that we, as a society, should attempt to provide every incentive for a manufacturer with knowledge that a defective product is on the market to warn its customers. If the damage, resulting from a defect is other than mere

>economic loss, *East River* leaves intact all tort-based theories of recovery including, but not limited to, duty to warn.

*Sea-Land Service, supra,* 134 F.3d at 155. The court continued that where damage from a defect is only to the product itself and is only economic, there is no tort recovery. This conclusion is as true for strict liability and negligence cases as it is for failure to warn cases. *Id.* at 156. Thus, the court held that a manufacturer may be culpable of a failure to warn except that if the damage is solely to the product itself and is solely economic, ***there is no tort recovery***. *Id.* [Emphasis Added].

Similarly, in *Continental Insurance v. Page Engineering Co.,* 783 P.2d 641 (Wyo. 1989), the plaintiffs' claim arose from the failure of a product which destroyed itself but caused no personal injury or other property damage. The plaintiffs sued the manufacturer under various theories, including negligent failure to warn. The trial court dismissed all plaintiffs' tort claims pursuant to the economic loss rule.

On appeal, the plaintiffs argued, as does plaintiff here, that their post-sale failure to warn claim should have been permitted to proceed under the holdings in *Miller Industries v. Caterpillar Tractor Co.,* 733 F.2d 813 (11th Cir. 1984), and *McConnell v. Caterpillar Tractor Co.,* 646 F.Supp. 1520 (D.N.J. 1986).[1] The Wyoming Supreme Court disagreed and expressly rejected the analysis in *Miller* and *McConnell* as being

---

[1] It is important to note that both *Miller* and *McConnell* are no longer good law. *Miller* predated *East River* and has been criticized and rejected by the courts that have addressed the issue. *See Airport Rent-A-Car, Inc. v. Prevost Car, Inc.,* 67 F.3d 901 (11th Cir. 1995). *McConnell* was rejected by *Sea-Land Service, Inc. v. General Electric Company, supra,* 134 F.3d 149, 156 (3rd Cir. 1998).

inconsistent with the policies underlying the economic loss rule and the legal distinctions between tort and contract law:

> [W]e rest our rejection of [plaintiffs'] argument squarely upon the proposition that recovery for pure economic loss should not be permitted when the tort alleged is failure to warn. Recognizing the conclusion to the contrary in [*Miller* and *McConnell*], we perceive that both styles of tort concern the conduct of the manufacturer, albeit that conduct may occur at different times in connection with the manufacturer's business. Certainly, it may be argued that the manufacturer who intentionally, or negligently, fails to warn of a known defect in a product that has been placed on the market is more culpable for his actions. The rejection of recovery for pure economic loss under theories of negligence and strict liability, however, has not been because of the absence of culpability, but because the policy that economic loss is better adjusted by contract rules than by tort principles. What is true with respect to strict liability and negligence, i.e. the risk associated with a product which does not meet the expectations of a buyer is a risk better suited to resolution by agreement between sophisticated bargaining parties rather than shifting the economic burden through tort principles, also is true with respect to the tort of failure to warn. See W. Keeton, Prosser and Keeton on the Law of Torts, § 101 at 709.

*Continental Insurance, supra,* 783 P.2d at 649-50.

The *Continental Insurance* court also rejected the contention of the courts in *Miller* and *McConnell* that failure to recognize such an action might encourage "a manufacturer who is aware it has a defective product on the market to hide behind its warranty while the buyer unknowingly uses it." *See Miller, supra,* 733 F.2d at 818; *McConnell, supra,* 646 F.Supp. at 1526 (quoting *Miller*); *see also* Plaintiff's Opposition,

p. 4. The court reasoned that imposing liability in tort for personal injuries and property damage is ample incentive to encourage manufacturers to warn of dangerous defects of which they are aware. *Continental Insurance,* 783 P.2d at 650.

The court further found no inherent wisdom in recognition of a cause of action for economic losses based upon a post-sale duty to warn which "could impose a duty on the manufacturer to advise each customer of every change in the design of its product that, in some way, might lengthen the useful life of that product." *Id.* On the other hand, the court noted that to permit recovery where the product damages only itself simply because the plaintiff has alleged failure to warn of the defect will only encourage plaintiffs to present claims "clothed in 'failure to warn' language" that otherwise would be precluded by the economic loss rule. *Id.* As the court held, adoption of a tort theory of recovery for economic loss based upon allegations of a breach of a post-sale duty to warn would simply permit the plaintiff "to reach through a rear door that sanctuary from which he is foreclosed by a bar on the main entrance." *Id.*

The same result was reached by the court in *Mays Towing Co. v. Universal Machinery Co.,* 755 F.Supp 830 (S.D. Ill. 1990). There, the plaintiff argued that it could recover economic loss in the nature of damage to the product itself if the alleged failure to warn occurred after the sale of the product. *Id.* at 833. The court disagreed and held it would not permit plaintiff to circumvent *East River* by alleging the claim under a post-sale failure to warn theory:

> Plaintiff is precluded from recovery for damages to the product itself under any products liability tort theory. This conclusion is logically derived from *East River*.

*Id.* at 834. The court specifically found the *Miller* court's contrary holding unpersuasive because it predated *East River* and because the holding in *East River* addressed the type of damages recoverable under a tort versus contract theory, and the Supreme Court did not limit its holding to particular tort theories. *Id.*

Again, in *Hartford Fire Insurance Company v. Huls America, Inc.*, 921 F.Supp. 278 (E.D. Penn. 1995), and *Midland Enterprises, Inc. v. Philadelphia Gear Corporation*, 1988 WL 130748 (E.D. La. 1988), both district courts relied heavily on *East River* in rejecting the claim that a post-sale failure to warn justifies the creation of an exception to the economic loss doctrine. The courts focused on the fact that the holding and reasoning of *East River* are clear and unambiguous. Because *East River* immunizes a manufacturer of a product from suit for damages to the manufactured product under a negligence theory, there should be no doubt that its holding should be read broadly and not limited to those negligence claims specifically addressed in *East River*. *Hartford Fire Ins. Co.*, *supra*, 921 F.Supp at 279-81; *Midland Enterprises*, *supra*, 1988 WL 130748 at *3.

As a final example, in *Utah International, Inc. v. Caterpillar Tractor Co.*, 108 N.M. 539, 775 P.2d 741 (Ct. App. 1989), the court affirmed dismissal of a claim for economic loss based on an alleged breach of a post sale duty to warn under the economic loss doctrine. The plaintiff in *Utah International*, sought to uphold its claim under the

*McConnell* decision.[2] The court, however, found *McConnell* to stand alone against the multitude of post-*East River* cases that apply broadly the rule prohibiting any cause of action in tort for recovery of economic loss. *Utah International*, 775 P.2d at 745. The court held that "the same policy considerations which apply to defects in manufacturing also apply to failure to warn of defects." *Id.*

This Court, like the courts in *Sea-Land Service, Inc., Continental Insurance, Mays Towing Co., Hartford Fire Insurance Company, Midland Enterprises, Inc.*, and *Utah International, Inc.*, should reject plaintiff's suggestion that an "exception" to the economic loss doctrine exists which would allow recovery against a product manufacturer of purely economic loss caused by a breach of an alleged post-sale duty to warn. The fundamental policies that underlie the distinction between the laws of contract and tort, embodied in the economic loss doctrine as enunciated in *East River*, preclude the recognition of such an exception and justify summary judgment in favor of Caterpillar.

3. **The Decisions Relied Upon By Plaintiff Provide No Basis for Recognizing Plaintiff's "Possible Exception."**

The isolated court decisions, relied upon by plaintiff, provide no compelling basis to break away from the precedent set forth in *East River*. For example, plaintiff's reliance on *Miller Industries, supra*, is entirely misplaced. In fact, *Miller* no longer

---

[2] The *McConnell* court wholesale adopted the analysis in the *Miller* opinion, which coincidentally is one of the only two cases cited by plaintiff in its Opposition.

represents good law, even in admiralty cases in the Eleventh Circuit. The *Miller* court's holding was premised on the circuit's historic rejection of any rigid separation of the law of contracts or sales and the law of torts in admiralty cases. *Miller*, 733 F.2d at 817 (discussing *Jig the Third Co. v. Puritan Marine Insurance Underwriters Corp.*, 519 F.2d 171 (5th Cir 1975) (former Fifth Circuit), *cert. denied*, 424 U.S. 954 (1976)). In fact, in *East River*, the Supreme Court granted certiorari "to resolve a conflict" between the Third Circuit's decision in *East River* and the decisions of the courts in *Miller* and *Jig the Third*, among others. *East River, supra*, 476 U.S. at 863, n. 1.

By adopting in large part the rationale of the Third Circuit, but creating an even brighter line and more rigid separation between the harm protected against by tort versus contract law and policy, the Supreme Court necessarily overruled and disapproved *Miller* and its precursors which were in conflict. *Id.* at 862, 870-76; *see Shipco 2295, Inc. v. Avondale Shipyards, Inc.*, 825 F.2d 925, 927 (5th Cir. 1987), *cert. denied*, 485 U.S. 1007 (1987). Accordingly, *Miller* provides no persuasive authority to guide this Court's analysis.

The second case cited by plaintiff, although not discussed, is *Brown v. Eurocopter S.A.*, 143 F.Supp.2d 781, 783 (S.D. Texas 2001). *Brown*, however, adds no sound support to plaintiff's argument as the court relied entirely on the reasoning and holding in *Miller*. Moreover, decisions from the Fifth Circuit indicate that if it was presented with the proposed "post-sale duty to warn exception," it would likely reject the argument.

In *Nicor Supply Ships Associates v. General Motors Corporation*, 876 F.2d 501 (5th Cir. 1989), the court discussed the "possible exception" to *East River* carved out by *Miller*. The "possible exception" related to *Miller's* holding that a viable cause of action in tort could be maintained to recover economic loss caused by failure to warn of a defect learned about by the manufacturer after the product had been delivered. *Id.* at 504. Since the case before it did not involve such facts or allegations, the *Nicor* court did not consider the merits of the "possible exception" further. However, *Nicor* does support the proposition that a cause of action in tort does not exist for a manufacturer's breach of duty to warn which breach allegedly causes only economic loss:

> While failing to warn a purchaser of a defect in a product known at the time of manufacture is, of course, different from manufacturing a defective product, both negligent acts occur during the manufacturing process and before delivery of the product to the buyer. We are unable to assign to either act a relatively higher level of consciousness of wrongdoing, and thus do not discern a meaningful legal difference between them. Nicor's second cause of action is but a variant of its first claim, attempting to saddle a manufacturer with liability for damages that the Supreme Court has refused to impose.

*Id.* at 504.

As explained by the court, recognizing such a cause of action in tort "would invite all purchasers of self-damaging products that were negligently manufactured but beyond the coverage of the warranty to style their complaints in terms of the manufacturer's negligent failure to warn of a know defect." *Id.* Permitting recovery on such grounds

would frustrate the foundational principle underlying the economic loss doctrine and the distinction between tort and contract law – that a manufacturer should be liable for the damage a product causes to itself as a result of negligent manufacture or design *only* to the extent that the parties have contractually agreed to apportion liability in such a manner. *Id.* In any event, no cause of action in tort exists. *Id.* It stands to reason that the timing of a manufacturer's failure to warn, pre-sale versus post-sale, would not alter the court's analysis. *See Continental Insurance, supra,* 783 P.2d at 649-50 (recognizing the same concerns and policies apply where a post-sale failure to warn claim is alleged). Thus, it appears the holding in *Brown* would not survive if properly challenged.

B. **THE EVIDENCE SUBMITTED BY PLAINTIFF IN SUPPORT OF ITS OPPOSITION IS PURELY SPECULATIVE AND CONCLUSORY AND SHOULD NOT BE CONSIDERED BY THIS COURT.**

Assuming arguendo, that this Court is inclined to apply plaintiff's proposed "post-sale duty to warn exception," which this defendant strongly opposes, plaintiff has demonstrated a complete inability to satisfy the exception. At the very minimum, as articulated in plaintiff's Opposition, the exception requires (1) that there be, in fact, a defect in the product, and (2) actual knowledge of the defect. *See Miller Industries, supra,* 733 F.2d 813; *Brown, supra,* 143 F.Supp.2d 781. Plaintiff has not and cannot establish, by admissible evidence, these requisite elements upon which basis summary judgment is properly granted as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

It is axiomatic that for plaintiff to sustain its claim that Caterpillar negligently failed to warn of post-sale defects in its 3208 marine engines, plaintiff must first demonstrate not only that the 3208 line of engines did in fact suffer from a defect but also that plaintiff's alleged engine failure was caused by the same defect. Plaintiff has no admissible evident to sustain this burden.

As more thoroughly discussed in Caterpillar's Objection to the Affidavit of Bob Wilkison filed concurrently with this Reply Brief, the Scheduling and Planning Order of this Court required that expert witness disclosures in accordance with Rule 26(a)(2) be made no later than 90 days before the close of discovery.[3] Pursuant to stipulation of the parties, the discovery cut-off was set for June 30, 2006.[4] This set an expert disclosure deadline of Friday, March 31, 2006. Plaintiff, however, has failed to disclose any expert witnesses or their required reports. Moreover, plaintiff has yet to identify a specific defect theory for the alleged failure. Thus, without any admissible expert testimony, plaintiff cannot articulate or establish whether the unidentified defects in 3208 marine engines were present in the subject engine or if these alleged defects caused the failure at issue.

Similarly, plaintiff is relying exclusively on the Affidavit of Mr. Robert Wilkison to establish that this defendant was somehow aware of unidentified "problems and/or

---

[3] *See* Exhibit A, Scheduling and Planning Order.

[4] *See* Exhibit B, Order Modifying Discovery Completion Deadline.

Reply Brief in Support of Motion for Summary Judgment by Defendant Caterpillar Inc.
*Ninilchik Charters, LLC v Caterpillar Inc.*
Case No. 3:04-cv-250 (TMB)
(8367-2/246173)                                       Page 14 of 16

defects" in its 3208 marine engines. The Affidavit, however, is entirely speculative and should not be considered by this Court. While Mr. Wilkison affirms that Caterpillar "has to have worked" on many 3208 engines and "knows about repeated problems and/or defects," Mr. Wilkison cannot even confirm what the alleged problems were.[5] Further, he does not identify any personnel at Caterpillar who are aware of the information, when the information was received, or what information was in fact provided to this defendant. Similarly, Mr. Wilkison does not even address whether he inspected the subject engine to determine if it suffered from the same "problems and/or defects." Mr. Wilkison's blatant speculation must be excluded by this Court. Accordingly, with no admissible evidence to establish any defect in the subject engine or the entire line of 3208 marine engines and no evidence to demonstrate that Caterpillar was actually aware of the unidentified defects, plaintiff's "failure to warn exception" fails and this defendant is entitled to summary judgment as a matter of law.

### III.
### CONCLUSION

The Supreme Court has clearly and unambiguously spoken that, regardless of what tort theory upon which liability is predicated, ***no products liability claim lies in admiralty*** when the only injury claimed is economic loss. In an attempt to avoid this explicit

---

[5] It is interesting to note that although Mr. Wilkison affirms that he is aware and has seen repeated problems and/or defects in Caterpillar 3208 engines with a horsepower of 375 or above, Mr. Wilkison replaced the subject engine **with an identical 3208 engine.**

directive, plaintiff is seeking to have this Court apply a proposed "post-sale failure to warn exception." This exception, however, undermines the principles of tort law and the economic loss doctrine and has thus been repeatedly rejected across the country. In the utter absence of any viable legal theory to hold this defendant liable, summary judgment is properly granted in favor of Caterpillar Inc. as a matter of law.

DATED at Anchorage, Alaska, this 3rd day of May, 2006.

HUGHES BAUMAN PFIFFNER
GORSKI & SEEDORF, LLC
Attorneys for Defendant Caterpillar Inc.


By:   s/ Frank A. Pfiffner
      Frank A. Pfiffner
      3900 C Street, Suite 1001
      Anchorage, AK  99503
      Phone: (907) 263-8241
      Fax: (907) 263-8320
      E-mail: fap@hbplaw.net
      ABA No. 7505032


Certificate of Service

I hereby certify that on May 3, 2006, a copy of the foregoing REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT BY DEFENDANT CATERPILLAR INC. was served electronically on:

Leonard R. Anderson
Davis, Randall, Anderson, & Mathis, PC
405 W. 36th Avenue, Suite 200
Anchorage, AK 99503-5872

s/ Frank A. Pfiffner